UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| v. | ) | Criminal No. 21-cr-206-1 (EGS) |
| | ) | |
| **JONATHAN MELLIS,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# DEFENDANT'S MOTION FOR RECONSIDERATION OF PRETRIAL DETENTION

## INTRODUCTION

Jonathan Mellis, by and through undersigned counsel, respectfully moves this Court, pursuant to 18 U.S.C. § 3142, to release him pending trial in this matter.

Mr. Mellis is before this Court charged by Superseding Indictment with various counts related events occurring at the United States Capitol on January 6, 2021.[1]

On February 16, 2021, Mr. Mellis was arrested in this matter and has been held without bond since then. *See* ECF 6.  No detention hearing was conducted.  However, on May 20, 2021,

---

[1] 1) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); 2) Obstruction of an Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; 3) Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b); 4) Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ l752(a)(1) and (b)(l)(A); 5) Disorderly and  Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(l)(A); 6) Impeding Ingress and Egress in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ l 752(a)(3) and (b)(l)(A); 7) Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ l752(a)(4) and (b)(1)(A); 8) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C § 5104(e)(2)(D); 9) Impeding Passage Through the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(E); and 10) Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F).

1

Mr. Mellis filed a Motion for Temporary Release to attend his father's funeral. *See* ECF 17. The government filed its opposition, and the Court issued a Minute Order denying the request on the same day. *See* ECF 18 and Minute Order dated 5/20/21.

Mr. Mellis is thirty-four (34) years old, and was employed in the food service industry in Nashville, Tennessee before his arrest. He also volunteered a great deal of time at a senior citizens center in Lebanon, Tennessee and with other non-profit organizations. Mr. Mellis spent the better part of 2020 in Williamsburg, Virginia where his family lives, and Memphis, Tennessee, where he was staying with his girlfriend. If released, Mr. Mellis would stay with his girlfriend, who has been screened and approved by Pretrial Services as a third-party custodian.[2]

Mr. Mellis is neither a flight risk nor a danger to the community, and there are a condition or combination of release conditions that the Court can impose to release Mr. Mellis without risk to the community.

## ARGUMENT

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., a judicial officer "shall order" a defendant's detention before trial if, after a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). However, in our society, liberty is the norm, and detention prior to trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Where the government requests pretrial detention, specific requirements must be fulfilled before a defendant may be detained. In order to warrant an exception to this presumption of freedom, the government is required to demonstrate the

---

[2] Counsel can provide the name and address of the approved third-party custodian to the Court upon request.

appropriateness of pretrial detention by clear and convincing evidence. 18 U.S.C. § 3142(f). Additionally, the judicial officer considering the propriety of pretrial detention must consider four factors: (1) [t]he nature and circumstances of the offense charged; (2) the weight of evidence against the person; (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; . . . and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

The Court has recently discussed the fourth factor listed above – the danger to the community – in the context of the January 6th cases. Specifically, in *Munchel v. United States*, the D.C. Circuit held that: "[t]o order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community. The threat need not be of physical violence, and may extend to non-physical harms such as corrupting a union. But it must be clearly identified." 991 F.3d 1273, 1283 (D.C. Cir. 2021) (citation and internal quotations omitted).[3]

---

[3] In *Munchel*, the Circuit did not find that the government had sufficient evidence of dangerousness where the defendants went to the January 6th rally with tactical vests, a stun gun and at least a pocketknife. *Munchel*, 991 F.3d at 1276. They met with members of the Oath Keepers militia and bragged about "enter[ing] the building with armor and f_ing weapons." *Id*. Once inside, they gathered zip ties and went to the Senate gallery. *Id*. When agents searched their home, they found firearms and a "large quantity of loaded magazines." *Id*. at 1277. By contrast, Mr. Mellis is not alleged to have brought any weapons to the Capitol nor is it alleged that he met with any militia members. Moreover, he never went inside the Capitol, unlike the defendants in *Muenchel*.

In considering the above factors, Mr. Mellis is not a flight risk, is not a danger to the community, and there are conditions or combinations thereof that can effectively ensure the safety of the community.

In arguing in opposition to Mr. Mellis' Motion for Temporary Release filed earlier in the year, the government primarily relied on the alleged dangerousness posed by Mr. Mellis given the nature and circumstances of the offense. *See* ECF 18. The government claimed that Mr. Mellis came to Washington, D.C. "to participate in the violent insurrection against the government of the United States." *Id*. at 2.  As discussed below, this is simply untrue.

### *January 6, 2021*

The government claimed that on January 6, 2021, Mr. Mellis "willfully and deliberately used a large stick/large wooden object – a deadly weapon –  and used that weapon to repeatedly strike or stab at law enforcement officers in the face, head, neck, and body area." *See* ECF 18 at 2-3.  This is not accurate.  Mr. Mellis  came to Washington, DC to attend a rally in support of President Trump.  Mr. Mellis did not travel with anyone or not bring any weapons to the city.  He did not plan for or prepare for any sort of assault or attack on January 6, 2021.

### *Mr. Mellis Had No Intent to Hurt Anyone*

Mr. Mellis did not intend to hurt anyone on January 6.  At one point during the events of that day, Officer Michael Fanone was attempting to navigate the huge crowd of protesters at the Capitol.  In the attached video,[4] Mr. Mellis, who was positioned approximately 15 feet away, can be heard and seen yelling to the crowd to not hurt Officer Fanone.  He repeatedly shouts at the crowd to not hurt the officer, to "show him how merciful we are," and "keep him safe."[5]

---

[4] Counsel will provide the government and the Court with a USB containing the referenced video exhibits.

[5] IMG_5246(1).mp4

4

*Mr. Mellis' Seconds of Action Was in Response to Witnessing the Plight of Rosanne Boyland.*

The government failed to mention that Mr. Mellis' actions were entirely in response to, and in the context of, witnessing the plight of Rosanne Boyland. On Officer Loaner's Body Worn Camera ("BWC") footage,[6] Ms. Boyland can be seen lying on the ground appearing to be unconscious. It is unclear if she had already died at this point.[7] On Officer Sajumon's BWC, it can be clearly seen and heard that people were being crushed and unable to move.[8] A few seconds later, at 16:25:44, a voice can be heard saying "get her up, get her up." *Id*. At 16:27:47, Ms. Boyland can be seen again lying on the ground, apparently unconscious, as civilians, not police, attempt to render aid. *Id*. Officer Huff's BWC[9] shows a civilian attempting to perform CPR on Ms. Boyland, and then her seemingly lifeless body being dragged by police.[10] Officer Chen's BWC[11] shows civilians pleading for help from the officers, asking for a "medic;" the police ignore the pleas.[12] On Officer Morris' BWC,[13] Ms. Boyland's body can be seen lying

---

[6] At 16:27:09-11.

[7] *See* Exhibit 1, Loaner BWC Loaner BWC (0060) - 20210106_-_CDU_-_1D.mp4 at 16:27:11

[8] *See* Exhibit 2, Ofc. Sajumon BWC, AXON BODY 3 X6039BJ8Z, "20210106-FELONY_APO_RIOTOUS_ACTS-US_CAPITOL_COMPLEX.mp4" at 16:25:30-16:29:00

[9] At 16:30:50.

[10] *See* Exhibit 3, Ofc. Huff's BWC, AXON BODY 3 X6039BF7Q, "Huff (1) - 20210106-Felony_Rioting_-_US_Capitol.mp4" at 16:30:54

[11] Beginning at 16:29-16:30.

[12] *See* Exhibit 4, Ofc. Chen's BWC, AXON BODY 3 X6039BJFT, "Chen - 20210106_-_FELONY_RIOTS_-_US_CAPITAL_BUILDING_.mp4" at 16:26-16:30.

[13] At 16:26-30.

unconscious as she is stepped on, and civilians attempt to retrieve her body and provide medical assistance.[14] Voices can be heard screaming "she's dead, she's dead." *Id*.

As around the time Mr. Mellis approaches, a man wearing a blue jacket is yelling "help her, help her!"[15]  It is at this point that Mr. Mellis comes into the picture – having just witnessed the trampling and death of Ms. Boyland.  He is handed a stick and for approximately ten (10) seconds uses it to defend others from what he perceived to be an imminent threat.[16]

### *Mr. Mellis Does Not Have a History of Flight or Serious Violence*

Although Mr. Mellis does have prior criminal convictions, the most serious, in which he was convicted of conspiring to manufacture/sell methamphetamine in Williamsburg and James City County, Virginia, did not involve a weapon and was otherwise non-violent.[17]  He does have several misdemeanor convictions[18] for assault and other petit offenses, but all occurred 13-15 years ago, during a time in which Mr. Mellis was engaged in substance abuse.  The infractions incurred while incarcerated all occurred before the latter portion of his sentence.[19]  Mr. Mellis matured greatly while in prison and incurred no violation after 2014, and since his release from prison in 2017 Mr. Mellis has not been convicted of any offense.

---

[14] *See* Exhibit 5, Ofc. Morris BWC, AXON BODY 3 X6039BJFT, "20210106_-_FELONY_RIOT_-_US-CAPITOL

[15] 20210106_-_FELONY RIOT_-_US CAPITOL, at 16:27:50.

[16] Mellis Assault on USCP Officer.mp4.

[17] CR0801689700  *See* Pre-Plea Guideline and Criminal History Calculation, ¶ 31.

[18] *Id.* at ¶¶ 27-35.

[19] *Id.* at ¶ 31.

The Pre-Plea Guideline and Criminal History Calculation ("Pre-Plea Calculation") determines Mr. Mellis' potential criminal history score to be five (5), with a potential criminal history category of III. This includes two (2) points for allegedly committing the instant offense while under a criminal justice sentence in Case No. CR0801689700.[20] However, according to the Pre-Plea Calculation, Mr. Mellis' probation in this case was terminated early on March 12, 2019,[21] well before January 6, 2021. Thus Mr. Mellis' potential criminal history score should be three (3), and his potential criminal history category should be a II, not a III.

As well, paragraph 39 of the Pre-Plea Calculation lists numerous traffic infractions purportedly incurred by Mr. Mellis. They all allegedly occurred between November 9, 2012, and September 14, 2017. However Mr. Mellis was incarcerated from March 12, 2009, until October 19, 2017, so this paragraph is apparently inaccurate.

There is no indication that Mr. Mellis would fail to appear or would otherwise flee prosecution.

### *Other Similarly Situated Defendants*

To continue Mr. Mellis' incarceration would also create inconsistencies with other January 6th defendants accused of arguably greater misconduct who have been granted release. For example:

- *United States v. Richard Barnett*, 1:21-cr-38-CRC. Barnett entered the Capitol building armed with a stun gun, brazenly sat at Speaker Pelosi's desk and posed for photos. He is also alleged to have stolen an envelope from the Speaker's office. *See* ECF 3 (Amended Complaint and Statement of Facts). Barnett is charged with, *inter*

---

[20] *Id.* at ¶ 37.

[21] *Id.* at ¶ 31.

7

*alia*, knowingly entering and remaining in any restricted building without lawful authority while armed with a dangerous weapon, in violation of 18 U.S.C. §1752. On April 27, 2021, Mr. Barnett's motion for reconsideration of bail was granted and he was ordered released into the High Intensity Supervision Program. *See* ECF 29.

- *United States v. Robert Sanford*, 1:21-cr-52-ZMF. Sanford is alleged to have hurled a fire extinguisher into a crowd of police officers and striking at least three officers in the head. Video footage allegedly captures Sanford screaming "traitors" and "cowards" at the officers. *See* ECF 10 (Government's Opposition to Defendant's Motion to Reconsider Detention). Like Mr. Mellis, Sanford is charged with, *inter alia*, assaulting a police officer using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b). Yet on March 2, 2021, Mr. Sanford's motion for release was granted and he was placed on GPS monitoring. ECF 11.

- *United States v. David Alan Blair*, 1:21-cr-86-CRC. Blair was captured on body worn camera brandishing a lacrosse stick which served as a pole for a large confederate flag. *See* ECF 1 (Complaint and Statement of Facts). While walking back and forth between the crowd and police officers, Blair is alleged to have exhorted, "hell naw, quit backing up, don't be scared. . .". As an officer advanced, Blair yelled at the officer: "what's up motherfucker, what's up, what's up bitch." *Id*. He then struck the officer in the chest with the lacrosse stick and had to be forcibly restrained by multiple officers *Id*. Notwithstanding this direct physical assault with a lacrosse stick, Blair was ordered released with conditions. ECF 6. Like Mr. Mellis, Blair is charged with, *inter alia*, assaulting a police officer using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b).

- *United States v. Michael Foy*, 1:21-cr-108-TSC. Foy was captured on publicly available video brandishing a hockey stick and swinging it at an officer on the ground. *See* ECF 1 (Complaint and Statement of Facts). Foy is later seen exhorting the crowd to enter the Capitol, and then crawling into the Capitol building himself through a broken window. *Id.* Like Mr. Mellis, Foy is charged with, *inter alia*, assaulting police officer using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b).

- *United States v. Clayton Ray Mullins,* 1:21-cr-35-EGS.  Mullins was captured on publicly available video and body worn camera pulling an officer into the crowd of rioters, away from a group of officers defending the Capitol.  *See* ECF 1 (Complaint and Statement of Facts).  Like Mr. Mellis, Mr. Mullins is charged with, *inter alia*, assaulting a police officer using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b).

- *United States v. Grady Douglas Owens*, 1:21-cr-286-BAH. Owens allegedly struck a law enforcement officer with a skateboard, struggled against officers to enter the Capitol, and incited others around him to do the same. *See* ECF 14 (Government Response to Defendant's Motion to Revoke Detention Order).  Like Mr. Mellis, Mr. Owens is charged with, *inter alia*, assaulting a police officer using a dangerous weapon, in violation of 18. U.S.C §§ 111(a)(1) and (b).

- *United States v. Russell Taylor*, 1:21-cr-392-RCL-2, Taylor allegedly fought back a line officers defending the Capitol and advanced to the Upper West Terrace where he celebrated with co-conspirators.  *See* ECF 11 (Government Motion for Revocation of Release Order).  Taylor was armed with a knife and was wearing a tactical vest on

>January 6. *Id*. Prior to January 6, Russell started and participated in a Telegram chat group, purportedly for the specific purpose of organizing a group of "fighters" to travel from California to Washington, D.C. to disrupt the peaceful transfer of power on January 6. *Id*.

Furthermore, and most importantly, as the *Munchel* Court recently held, this Court must consider the specific circumstances that made the defendant's dangerous conduct possible. *Munchel* at 1283. ("The District Court also failed to demonstrate that it considered the specific circumstances that made it possible, on January 6, for Munchel and Eisenhart to threaten the peaceful transfer of power. The appellants had a unique opportunity to obstruct democracy on January 6…."). Thus, if this Court follows the directive to "consider [the threat] in context," "it follows that whether a defendant poses a particular threat depends on the threat identified and the resources and capabilities of the defendant."

Mr. Mellis was in the District of Columbia on January 6th to attend a peaceful, political event led by the then-President of the United States. Mr. Mellis does not pose a particular danger because he will not have the opportunity, capability, or resources to be a threat to democracy or to the Capitol Police. His limited participation was fully bounded by the scope of the January 6th events, and more particularly, by witnessing the death of Ms. Boyland at what he believed to be the hands of police.

Taken as a whole, there is not "clear and convincing evidence that Mr. Mellis presents an identified and articulable threat to an individual or the community [so that] a court may disable the arrestee from executing that threat." *Id*. at 1282 (quoting *Salerno*, 481 U.S. at 751). To the extent that there is any evidence that Mr. Mellis is a threat (and counsel maintains that there is

not), the Court can fashion a combination of conditions that would reasonably assure the Court that he is not.

Based upon all of these factors, Jonathan Mellis respectfully requests that the Court release him pending trial to the High Intensity Supervision Program with all relevant conditions that the Court deems appropriate.

                                                          Respectfully submitted,

                                                          _____s/_____
                                                          David Benowitz
                                                          Bar # 451557
                                                          *Counsel for Jonathan Mellis*
                                                          Price Benowitz LLP
                                                          409 Seventh Street, NW
                                                          Suite 200
                                                          Washington, DC  20004
                                                          (202) 271-5249
                                                          david@pricebenowitz.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of December 2021, a copy of the foregoing Motion for Reconsideration of Pretrial Detention was served on all parties via the CM/ECF system.

                                                      _____/s/_____
                                                      David Benowitz