UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES** | ) ) ) | |
| v. | ) ) | Criminal No. 1:21-cr-206-1 (EGS) |
| **JONATHAN MELLIS** | ) ) | |
| **Defendant.** | ) ) ) | |

### DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER PRETRIAL DETENTION

Defendant Jonathan Mellis, by and through undersigned counsel, respectfully submits this Reply in support of his Motion for Reconsideration of Pretrial Detention ("Motion"). ECF 27. In support of his Reply Mr. Mellis states the following:

*Argument*

The Government's Opposition to Mr. Mellis' release is predicated on its contention that Mr. Mellis is both a risk of flight and a danger to the community. *See* ECF 28 at 1. In support thereof, the Government relies upon a selective and subjective interpretation of Mr. *Mellis'* alleged conduct on January 6, 2021. There is nothing in Mr. Mellis' background to substantiate his continued incarceration – now approaching ten months with no trial date in sight.

The Government repeats here the same unsubstantiated claim it made when opposing Mr. Mellis' request to attend his father's funeral – that Mr. Mellis came to Washington, D.C. "to participate in the violent insurrection against the Government of the United States." *Id*. at 2; *see also* ECF 18 at 2. As in its earlier filing, the Government provides no evidence to support its claim that Mr. Mellis came to Washington, D.C. with the intent to participate in violence. Mr.

1

Mellis came to the District of Columbia to attend a peaceful, political rally. He traveled alone, he made no plans or arrangements beyond attending the scheduled rally at the Ellipse, and he did not bring any weapons, body armor, or other items to use in a "violent insurrection."

Similarly untethered from the evidence is the Government's unsupported claim that Mr. Mellis brought a large stick "to use to the Capitol (*sic*)." *See* ECF 28 at 4. This is also untrue – in fact, a video provided to the Court as an exhibit to Mr. Mellis' Motion shows that he was handed the stick by another individual amidst the ongoing chaos and confusion occurring at the Capitol.[1] The Government has attempted to frame Mr. Mellis' conduct and intention on January 6 without supporting evidence.

Mr. Mellis' alleged assaultive conduct encompasses only seconds and is contemporaneous with the injury and apparent death of another protestor directly in front of Mr. Mellis. Mr. Mellis' Motion lays out in detail and with reference to multiple video sources the harrowing and traumatizing circumstances of Roseland Boyland's apparent death close to him. *See* ECF 27 at 5.

The Government dismisses the trauma Mr. Mellis experienced witnessing someone possibly die in front of him amidst a violent struggle. In a series of conclusory statements, the Government derides Mr. Mellis' desire to protect the unknown stranger whose limp body was dragged in front of him as "insulting" or an "affront" to the officers at the Capitol on January 6. ECF 28 at 10, 14.  Yet the Government fails to explain the basis for its outright dismissal of Mr. Mellis' experience and perspective. Conversely, as detailed in his Motion, Mr. Mellis is clearly seen earlier in the day attempting to protect Officer Fanone from the potential violence of others

---

[1] Mellis Assault on USCP Officer.mp4, 0:00 – 0:03.  Identified to government counsel and submitted to the Court as part of Mr. Mellis' Motion.  ECF 27 at FN 16.

2

in the crowd. Such efforts are consistent with Mr. Mellis' purpose for being in the District – to show and communicate political support, rather than to commit violence. The Government does not explain why it considers Mr. Mellis' efforts to protect Officer Fanone - exhortations to the crowd "not to hurt" the officer - to be "an affront to the heroic officers… who risked their lives to protect our democracy." *Id* at 10.

The Government's assertion that Mr. Mellis is a flight risk is similarly supported by scant evidence on the record. Essentially, the Government argues that because Mr. Mellis could face a potential sentence of several years if convicted, he is *ipso facto* a flight risk. *See id.* at 13. This claim is belied by Mr. Mellis' deep personal and professional ties to Virginia. Moreover, the Government ignores the fact that his partner, with whom he was living in Tennessee at the time of his arrest, has already been screened and approved as a third-party custodian. The Court is equipped with extensive tools for supervision, and any concerns the Court may have about Mr. Mellis' risk of flight can be more than adequately addressed through strict conditions of release and close supervision. The Government does not point to any history by Mr. Mellis of avoiding Court or failing to appear when he previously faced a multi-year period of incarceration and gives no reason why he automatically becomes a flight risk now.

Mr. Mellis urges the Court to not be swayed by the Government's rhetoric. A clear-eyed, objective evaluation of Mr. Mellis' documented conduct on January 6, 2021, demonstrate that his discrete, isolated acts with the piece of wood were in direct and immediate response to the ongoing harm that another person was suffering. Just as he attempted to do with Officer Fanone, Mr. Mellis sought to mitigate and neutralize the violent behavior that he witnessed. At the very least, for purposes of this request to reconsider his detention, any concern about Mr. Mellis' dangerousness can be entirely cabined within the utterly unique events of January 6, 2021. In the

ensuing four months between that day and his arrest, Mr. Mellis was not a danger to the public. Prior to January 6, 2021, Mr. Mellis demonstrated through his record of lawful behavior that he had left the decade-old transgressions of his youth behind him, along with his struggles with substance abuse. The Court has ample tools and resources to address any possible risk Mr. Mellis could pose through conditions of release and supervision.

There is a screened and approved third-party custodian, Kelly Wilde, who is ready to assist in those supervisory efforts and ensure Mr. Mellis is accountable to the Court. Ms. Wilde is part of a strong support system that Mr. Mellis enjoys in the community. She and Mr. Mellis' brother, Aaron Mellis, have written letters in support of Mr. Mellis.[2]

To continue Mr. Mellis' detention requires an actual showing of dangerousness or risk of flight, not conclusory statements about Mr. Mellis' motivations or rhetorical appeals to the bravery of law enforcement officers. The Government has failed to make such a showing and therefore the Court should release Mr. Mellis.

WHEREFORE, for the reasons detailed in Mr. Mellis' Motion as well as those detailed *supra*, Mr. Mellis respectfully requests that the Court release him.

Respectfully submitted,

____/s/_____
David Benowitz
D.C. Bar No. 451557
Price Benowitz LLP
409 Seventh Street, NW
Suite 200
Washington, DC 20004
david@pricebenowitz.com
*Counsel for Jonathan Mellis*

---

[2] Please see Exhibits A-R and B-R.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 1st day of February, 2022, a copy of the foregoing Reply to the Government's Opposition to Defendant's Motion to Reconsider Pretrial Detention was served on all parties via the CM/ECF system.

                                                                ____/s/_____
                                                                David Benowitz