**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No. 21-CR-206 (EGS)** |
| | : | |
| **v.** | : | |
| | : | |
| **JONATHAN MELLIS,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S CONTINUED OPPOSITION TO DEFENDANT'S MOTIONS FOR RECONSIDERATION OF PRETRIAL DETENTION**[1]

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's Motions For Reconsideration of Pretrial Detention (hereinafter "Def. Mots.") (ECF Docs. 34, 35 & 36). The United States respectfully opposes defendant's motions; in view of the factors outlined in 18 U.S.C. § 3142(g), there are no conditions or combinations of conditions that can effectively ensure the safety of any other person and the community and reasonably assure the appearance of the defendant, pursuant to 18 U.S.C. § 3142(e).

For his conduct on January 6, 2021, Mellis is now charged by Indictment with: (1) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); (2) Obstruction of an Official Proceeding, in

---

1     In the Court's Minute Order dated July 18, 2022, the Court, *inter alia*, directed undersigned counsel for the government to file its responsive pleading to [(defendant's) 35] supplement by no later than August 15, 2022. In addition, in another Minute Order dated September 15, 2022, the Court directed undersigned counsel for the government to file a response to [(defendant's) 36] Supplement by no later than 5:00 pm on September 19, 2022. The government shall include an explanation of its failure to comply with the Court's Minute Order of July 18, 2022.

Undersigned counsel for the government respectfully avers, *inter alia*, that over the past three to four months, undersigned counsel for the government had been preparing for a three-co-defendant kidnapping and sexual assault federal jury trial before the Honorable Randolph D. Moss. In fact, that trial started on or about August 24, 2022, and continued until September 19, 2022, with continued jury deliberations. Simply stated, and with all due respect and honor to this Court and parties, undersigned counsel for the government forgot to respond consistent with the direction of this Court. More broadly, undersigned counsel for the government humbly apologizes to the Court and parties and will endeavor mightily never to make that err again.

violation of 18 U.S.C. §§ 1512(c)(2) and 2; (3) Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b); (4) Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ l752(a)(1) and (b)(l)(A); (5) Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(l)(A); (6) Impeding Ingress and Egress in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ l 752(a)(3) and (b)(l)(A); (7) Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ l752(a)(4) and (b)(I )(A); (8) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. §§ 5104(e)(2)(D); (9) Impeding Passage Through the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(E); and (10) Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F).

I.  **Government Response to Defendant's Third Supplement to Reconsider Pretrial Detention**

Importantly, the government incorporates by reference all its previous submissions, arguments, and oppositions to the defendant's numerous motions and oppositions for the defendant's pretrial detention. *See* Government's Oppositions/Motions ECF# 18, 28, 33.[2] In defendant's ECF #34 & 35, the defendant now argues again that he should be released to a third party and ostensibly various character/support letters for the defendant. *See* Defendant's ECF #34 at 1-2 and #35 at 1-2. For all the reasons reiterated herein and previously stated, *partim*, in Government's Opposition ECF# 18, 28, & 33 the defendant's motions should fail because the arguments are without legal or factual support nor does the defendant raise "new" issues which

---

2 In that regard, the government has appropriately opposed all the defendant's previous motions for release [Defendant's Motions ECF # 27, 29, 30, and 32], and incorporates herein further opposition at this time.

has changed the defendant detention status because the defendant is still a danger to the community if released.

First, the defendant proposes that his girlfriend, Kelly Wilde, be his third-party custodian and that a security company named Avigdor Protection Agency, LLC ("Avigdor") should be the defendant's third-party monitor if this Court release this defendant. *See* Defendant's ECF #34 at 1-2 and #35 at 1-2. Again, regarding Ms. Wilde and whether she and her financial resources[3] would be an appropriate third-party custodian, the government respectfully avers that she would be ill-suited to be a third-party custodian of this defendant because of her romantic relationship with the defendant; accordingly, the government concludes that Ms. Wilde must have been aware if not supportive of at least the defendant's actions and assaults on law enforcement officers, and that she must have been aware of the fact that the defendant was coming to Washington, D.C., to disrupt a lawful constitutional process.[4] ***Based on what the government has learned, the only thing this company would conduct a "once-a-day" check on the defendant to verify that the defendant is at a location. Significantly, in an interview with the owner of this company he stated to the FBI that his company "never had a court mandated supervision type contract."*** Therefore, this proposal is wholly inadequate and lacks the proper consideration for a third-party custodian.

---

3 On that issue, when addressing a third party custodian issues when a person had great resources and family ties Judge Walton held in *United States v. Tajideen*, No. 17-cr-46-RBW, 2018 WL 1342475, at *6 (D.D.C. Mar. 15, 2018), that while the Court has no reason to believe that the individuals selected for the defendant's security detail would intentionally violate federal law and assist the defendant in fleeing the Court's jurisdiction, it nonetheless is mindful of the power of money and its potential to corrupt or undermine laudable objectives. And although these realities cannot control the Court's ruling, they also cannot be absolutely discounted or ignored.

4 In addition, Judge Walton concluded that when considering a third-party request, that the Court is not convinced, considering these [§ 3142(g)] factors, that the defendant's new bail package incorporating the additional posting of his brother-in-law's home and the use of [third-party] will reasonably assure his appearance at all future court proceedings. *Id*. at *7.

In that regard, for this Court to even consider the acceptability of a third party-custodian, this Court must make findings and hear testimony from the purported custodian and allow the government to cross examine that person at any proceeding. What defense counsel has proffered is simply not enough. Indeed, regarding the purported third-party custodian identified by counsel for the defendant, the government respectfully avers that Avigdor would be ill-suited and unprepared to be a third-party custodian of this defendant. More broadly, regarding the issue of third-party custodian the government was able to find a least two judges from this court, with other riot defendant cases, who had previously rejected third-party custodians, in part, because those judges determined that those persons proffered were romantic partners and/or family members and that those persons were deemed unacceptable. Specifically, in *U.S. v. Caldwell*, 540 F.Supp.3d 66 (2021), Judge Kollar-Kotelly, held, *inter alia*, that:

> . . . The Court has taken into consideration Defendant Caldwell's proposed third-party custodians, and recognizes that either Ms. Caldwell or Mr. Caldwell would offer him a place to live if he were released. However, the Court would not rely on either potential custodian to report potential violations, given the difficulty of relying on family members to report any violations of conditions—especially in light of the past violent interactions between Defendant Caldwell and Ms. Caldwell. The family members may also not have a means to know his whereabouts or activities to be able to report any violations. Although Defendant Caldwell might still be able to convince the Court that "appropriate conditions, including a suitable third-party custodian, would mitigate the risk to community safety that his release poses," he has not made that substantial showing here. *See*, *United States v. Klein*, 539 F.Supp.3d 145, 156 (2021).

*Id*. at 84.

Moreover, Judge Moss in *U.S. v. Klein*, 539 F.Supp.3d 145 (2021), rejected a similar request by that defendant. Judge Moss held that:

> . . . Because the propriety of Klein's pretrial release turns, in large part, on where he will live and who will take responsibility for ensuring that he complies with the terms of his (possible) release, and because Klein has failed to provide Pretrial Services or the Court with a well-developed proposal, the Court must deny his motion for pretrial release, . . .

*Id*. at 156.

The government outlines for this Court, in a non-riot case where the issue of third-party custodian was an issue in a child pornography case, Chief Judge Howell in *U.S. v. Glover*, 21-MJ-609 Document # 23 found, in part, that:

> . . . The Court finds that neither the stringent release conditions proposed nor the availability of two third-party custodians sufficiently minimize the risk that defendant would be prevented from further receiving child pornography through his participation in elusive online group chats dedicated to the sexual exploitation of children, including infants.
>
> In short, the nature and circumstances of the alleged offense conduct, combined with the strength of the evidence against defendant, indicate an extraordinary degree of danger to the community, particularly to vulnerable children, that the Court concludes cannot be mitigated through the well-meaning supervision of two family members. *Id* at 12.

In no way has the defendant's motion met the above standard; thus, the defendant's motion fails.

## Government Response to Defendant's Submission of Additional Character Letters

The additional persons who submitted character letters on the defendant's behalf are unavailing in this case because most of the persons knew the defendant when he was convicted of several criminal offenses and when he was convicted and sentenced to a 10-year term of imprisonment for a felony drug conviction and the defendant's probation was terminated on

03/12/2019. *See* Pre-Plea Guideline and Criminal History Calculation dated September 10, 2021, at 5-10. In further examining one of the letters by the defendant's brother, Adam Milles who stated that he was writing to tell the Court "how [the defendant] adds value to not only our family, but his community." ***However, in an interview in March 2021 with the FBI and after the defendant's arrest in this case, Adam Mellis stated that on a trip to Las Vegas, the defendant "provoked individuals and almost caused altercations, for no reason" . . . and that the defendant was a "very radical individual and pushed agendas to far limits" . . . the defendant's "cognitive thinking was off" . . . and that the defendant was a "f--- up."*** Simply stated, even after serving a decade in prison and having been arrested and convicted of numerous criminal offenses did not stop the defendant from violently assaulting law enforcement officers in this case. Accordingly, this Court should not give these character letters or persons statements any weight in this Court's consideration.

## II.    Additional Government Response to Defendant's Motion to Reconsider Pretrial Detention

In addition, the government again incorporates by reference all its previous submissions, arguments, and oppositions to the defendant's numerous motions and oppositions for the defendant's pretrial detention. *See* Government's Oppositions/Motions ECF# 18, 28, 33. In defendant's ECF #36, the defendant summarizes and consolidates arguments previously made and some other purported contextual issues. *See* Defendant's Motion ECF# 36 at 1-2. For all the reasons reiterated herein and previously stated in the government's prior oppositions/motions, the defendant motion should fail because the arguments are without legal or factual support nor does the defendant raise "new" issues which have changed from this Court's previous holding in this

case. Ostensibly, the defendant rehashes the same arguments which have been rejected on previous occasions.

### Mellis' Violent Conduct and Assaults on Officers on January 6, 2021

Defendant Mellis came to Washington D.C. to participate in the violent insurrection against the government of the United States. Based on the evidence of the defendant's violent actions and attacks on law enforcement officers protecting the U.S. Capitol, defendant Mellis willfully and deliberately used a weapon – large stick/large wooden object - a deadly weapon and used that weapon to repeatedly strike law enforcement officers in the face, head, neck, and body area. Additionally, based on a review on the relevant photos and videos of defendant Mellis, he is seen encouraging other rioters to assault to officers. The defendant claims that the government has not produced any evidence that the defendant came to Washington, D.C., to participate in the violent insurrection against the United States. *See*, Defendant's Motion ECF# 36 at 2-3. All the Court needs to do is listen to the defendant's own words on January 6, 2021, as outlined below in the video the government will play for the Court the hearing:

- Well, we grouped up on the inaugural podium, and then, uh, the cops were shooting pepper spray, tear gas, flash bangs, cattle prods hitting us with crazy sh-- and ***we forced our way into the hallway, they broke the window out right next to the hallway and we were climbing in there.***

- Everybody, everybody, everybody on the podium, I'm telling you, look, don't even bullsh--, ANTIFA might have been in there, and doing a little thing, I don't give a sh---, ***it was Trumpers, we were there and we were there to be heard. For sure. They will ignore us any other time. They will make excuses for the riots and the violence that BLM and ANTIFA do and ANTIFA and BLM get everything they want every single time they throw a hissy fit and burn innocent buildings. We had a goal, to occupy that f--king Capitol Building, . . .***

- . . . I know we had a, we had a serious, we had a few serious injuries coming out, I know one of them was a female, **there was a lot of confusion, I couldn't see. We had actually, the guys had actually gotten one of the police officers. . . .**

The government reiterates the following:

Defendant Mellis' violent assault occurred in what is called the Lower West Terrace of the U. S. Capitol Building. The Lower West Terrace, which is a widely recognizable area of the Capitol Building, is located directly in the front-center of the building, facing the Washington Monument. The Lower West Terrace is a very visible area of the Capitol Building that, in public perception, is often used for symbolic or patriotic events, such as presidential inaugurations or the "Capitol Fourth" concert that is annually held on the Fourth of July. Indeed, on January 6, 2021, the Lower West Terrace was undergoing preparation for the inauguration of now-President Biden. Scaffolding had been erected for the media, and stairs, risers, and other flooring was in place to create the stage area upon which the inauguration would take place.

In the center of the Lower West Terrace is an archway with a short set of stairs that leads to a set of double doors; those doors permit entrance directly into the Capitol Building.[5]  At around 2:30 p.m., a large group of MPD and USCP officers assembled to protect the Lower West Terrace entrance from an advancing mob. That specific entrance was the site of some of the heaviest violence on January 6, 2021, as the mob of rioters, including defendant Mellis, battled with police officers on-and-off from approximately 2:40 p.m. to 5:15 p.m. Over a period of about two-and-a-half hours, groups of rioters came in waves and gathered in the archway and tunnel as they attempted to violently breach the police line to gain entrance into the U.S. Capitol. On multiple

---

5 Since January 6, 2021, this area has become colloquially known as "the tunnel." On January 6, 2021, the stairs leading from the Capitol doors down to the Lower West Terrace had been covered by a platform so that the tunnel floor was flush. At the entrance to the tunnel, stairs then led down to the Lower West Terrace itself. In the past, President-elects, including now-President Biden, walked through the Lower West Terrace entrance doors and the tunnel, and then down the stairs to the inauguration stage.

occasions throughout that period, rioters overran the archway and physically battled with police officers inside the tunnel, directly at the U.S. Capitol entrance. At other times, officers were able to push the group of rioters out of the tunnel – away from the doors – and out onto the Lower West Terrace. Despite the police orders to leave the area, defendant Mellis, and others, continued his assault on the officers in an effort to, at a minimum, cause serious bodily injury to the officers.

More broadly, defendant Mellis violently attacked officers while attempting to break through the center doorway on the Lower West Terrace to gain entrance to the U.S. Capitol Building. He used physical violence against officers who were protecting the entrance, and his individual participation in the larger mob heightened the overall violence and dangerousness of the day. Images and video taken at the U.S. Capitol show the mob attacking officers guarding the doors. Defendant Mellis and others hurled projectiles at the officers and physically assaulted them, often using weapons like poles, bottles, and in defendant Mellis' case, a large stick/large wooden object. Moreover, several officers were dragged into the crowd where they were stripped of their protective gear and beaten. Others used crowbars and various tools to knock the windows out of the U.S. Capitol so that unlawful individuals could enter. Defendant Mellis willfully and deliberately used a large stick/large wooden object - a deadly weapon and used that weapon to repeatedly strike or stab at law enforcement officers in the face, head, neck, and body area. In the photos or screen shots of available videos below the Court can see the defendant's actions and the brutal attacks on law enforcement officers he inflicted:

*MELLIS (in White Cowboy Hat) Striking Law Enforcement Officers with weapon/stick):*



*MELLIS (in White Cowboy Hat)(Striking/Stabbing at Law Enforcement Officers with weapon/stick):*



*MELLIS Assault Image 3 (Striking / Stabbing at Officers with blunt weapon):*

*MELLIS Assault Image 3 (Striking / Stabbing at Officer's neck):*



A review and understanding of the facts and circumstances in this case require the Court to conclude that there is no condition or combination of conditions that would assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1). Specifically, "[i]n determining whether the release of a defendant would endanger the community, the court must consider any available information concerning the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; the weight of evidence against the person; various personal information including character, employment, past conduct, and so on; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).

### Nature and Circumstances of the Offenses Charged

Defendant Mellis' violent and deliberate participation in the mob's efforts to break into the U.S. Capitol Building by assaulting police officers weighs heavily in favor of detention. During the course of the January 6, 2021, siege of the U.S. Capitol, over 100 law enforcement officers were assaulted by an enormous mob, which included numerous individuals with weapons – including this defendant, bulletproof vests, and pepper spray who targeted the officers protecting the U.S. Capitol. Additionally, the violent crowd encouraged others in the mob to work together to overwhelm law enforcement and gain unlawful entry into the U.S. Capitol. In the Lower West Terrace tunnel that day, USCP and MPD officers worked for almost three hours defending the U.S. Capitol. Officers spent much of that time under physical attack by a violent crowd – including by defendant Mellis – with a total disregard for the officers' safety and with an intent to harm the officers by repeatedly assaulting officers at the front of the police line in an effort to break through the line and into the U.S. Capitol Building. The officers in that line were in full uniform with clear and visible markings identifying themselves as officers.

The defendant again argues that "Mr. Mellis did not intend to hurt anyone on January 6. At one point during the events of that day, Officer Michael Fanone was attempting to navigate the huge crowd of protesters at the Capitol. . . . Mr. Mellis, who was positioned approximately 15 feet away, can be heard and seen yelling to the crowd to not hurt Officer Fanone. He repeatedly shouts at the crowd to not hurt the officer, to 'show him how merciful we are,' and 'keep him safe,'" (*see* Def. Motion ECF #27 at 4 and #36 at 3), is simply unpersuasive, unconvincing, and an affront to all the heroic officers – men and women – who risked their lives to protect our democracy.

It is without question that defendant Mellis chose to unlawfully enter the U.S. Capitol Grounds on January 6, 2021, for the stated purpose of preventing Congress from completing its constitutional duty of certifying the results of a lawful election. He selected one of the most visible and violent locations in which to do so. Defendant Mellis violently used a large stick/large wooden object to attack officers to cause harm to them and to hurt them with each blow he inflicted. His violent assault on the officers was persistent and unrelenting. Body-worn camera videos and other videos capturing his actions show defendant Mellis willfully struck law enforcement officers again and again in an effort to harm them.

### Weight of the Evidence against the Defendant

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. The evidence against defendant Mellis is very strong and compelling. Defendant Mellis does not question that fact of his identity in this case. Significantly, defendant Mellis was captured in multiple BWC and open-source videos that clearly showed him violently attacking officers who were defending the U.S. Capitol that day. Defendant Mellis' face and his violent actions are visible in multiple videos, as are his weapon – a large stick/large wooden object, white cowboy hat, and jacket that he wore on January 6, 2021. The government respectfully avers that there is not a doubt of the defendant's violent assaults on officers as this

15

Court views the evidence and the above photos and videos of the defendant's assault on the law enforcement officers.

### Defendant's History and Characteristics

The United States submits that defendant Mellis' history and characteristics demonstrate that he would be a danger to the community if released. According to the previously prepared Pre-Plea Calculation ("PSR") prepared by U.S. Probation Officer Carmen I. Newton, as outlined in ECF# 21, which include nine criminal convictions with one conviction for Conspire to Manufacture/Sell Methamphetamine Circuit Court, Williamsburg and James City County, VA (CR0801689700) for which the defendant was sentenced to 10 years incarceration.

The United States submits that defendant Mellis' conduct on January 6, 2021 demonstrated an utter disregard for the law and the legitimate functions of government, providing clear and convincing evidence that he is unwilling to follow lawful orders or defer to the legitimate authority of the government. When defendant Mellis assaulted law enforcement officers in his attempt to storm the U.S. Capitol, he did so in the presence of hundreds of law enforcement officers who were working to protect both the constitutionally mandated Certification proceeding and the members of Congress duty-bound to hold that proceeding. Simply stated, if defendant Mellis is unwilling to obey orders while in full view of law enforcement, or to conform his behavior to the law even when he disagrees with it, it is unlikely that he would adhere to this Court's directions and release orders. Significantly, as outlined and calculated by USPO Newton, (based upon a total offense level of 24 and a criminal history category of III, the guideline imprisonment range is 63 months to 78 months), the defendant is facing a significant period of incarceration if convicted of the charges which reinforces that the defendant is a danger and flight risk if released.

**Danger to the Community**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of defendant Mellis' detention. Defendant Mellis' dangerousness is illustrated by his highly public assault of officers at the U.S. Capitol Building. *See Chestman*, at *30 ("Nearly as significant is defendant's use of force to advance towards the Capitol and his use of words to lead and guide the mob in obstructing the police and pushing against police barriers"). Consequently, the United States is gravely troubled and very concerned by the nature of the allegations against him, and his potential threat to others if released.

Based on this evidence, the defendant's actions were violently perpetrated to cause harm to law enforcement officers who were protecting our seat of democracy. Given the above assessment of all four relevant factors, there is clear and convincing evidence that there are no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community and reasonably assure the appearance of the defendant, pursuant to 18 U.S.C. § 3142(e).

**Defendant's Statements in his Motion are Unfounded**

In his motion for reconsideration again defendant Mellis' attempts, without any legal or factual support, to cast himself as a modern-day protector of others is simply unfounded, and, the government respectfully avers, is insulting to all the heroic actions of law enforcement officers who were protecting the U.S. Capitol on January 6, 2021. Indeed, it is an offense to all the men and women in law enforcement who were protecting the U.S. Capitol that the defendant now suggests that, "[his] actions were entirely in response to, and in the context of, witnessing the plight of Rosanne Boyland. . . . Ms. Boyland can be seen lying on the ground appearing to be unconscious. . . . Ms. Boyland can be seen again lying on the ground, apparently unconscious, as

civilians, not police, attempt to render aid." *See* Def. Mot. ECF #27 at 6. Also, the defendant falsely claims that after he witnessed the alleged events above that he "comes into the picture – having just witnessed the trampling and death of Ms. Boyland. He is handed a stick and for approximately ten (10) seconds, uses it to defend others from what he perceived to be an imminent threat." *Id*. Now comes the defendant suggesting that his "actions with the wooded stick were in direct response to the trauma of witnessing her death first-hand." *See* Def. Mot. ECF #36 at 3-4. Simply stated again, these assertions by the defendant belies the true facts of this case and the defendant's violent actions. The evidence will show that the defendant using a large stick/large wooden object to strike law enforcement officers was a use of a deadly weapon which was unprovoked, illegal, and unjustified in all aspects. Based on this evidence, the defendant's actions were violently perpetrated to cause harm to law enforcement officers who were protecting our seat of democracy.

In addition, defendant Mellis mentions again strong family support and community ties. *See* Def. Mot. ECF# 27 at 2-3 and ECF# 36 at 8. However, the government would respectfully point the Court to what the defendant's brother said about him as outlined *supra*. Significantly, regarding family or "community ties," the framers of the Bail Reform Act thought differently. The Committee also noted with respect to the fact of community ties that it is aware of the growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance and has no correlation with the question of the safety of the community. S.Rep. No. 225, 3207. Nor is it clear why his family support now would stop the defendant from committing other violent acts as described above, nor will community ties keep him from doing so again. Therefore, these arguments are wholly without merit and are not supported by the facts and legal considerations found in the instant matter.

Counsel for the defendant cited several cases which allegedly supported his arguments

for release. *See* Def. Mot. ECF# 27 at 7-10. Specifically the government will address a few cases cited by the defendant – *United States v. Richard Barnett*, 1:21CR38-CRC, *United States v. Robert Sanford,* 1:21CR[86]-[PLF]*, and United States v. David Alan Blair,* 1:21CR86-CRC – were released by other judges in this courthouse is misleading, at best or flat-out wrong, in his suggestion that those defendants were released despite allegedly engaging in conduct far more culpable and violent than Mr. Mellis and that "[t]o continue Mr. Mellis' incarceration would also create inconsistencies with other January 6th defendants accused of arguably greater misconduct who have been granted release" *See* Def. Mot. ECF# 27 at 7-10. Fundamentally, none of the above cases that the defendant cites are of the violent, aggressive, or of a persistent nature to harm law enforcement officers on January 6, 2021, compared to what this defendant did on that day. In *Barnett*, that defendant entered the Capitol Building armed with a stun gun, sat at Speaker Nancy Pelosi's desk, and posed for photos; in *Sanford*, that defendant was alleged to have hurled a fire extinguisher into a crowd of police officers*,* and in *Blair*, that defendant brandished a lacrosse stick which served as a pole for a large confederate flag. Simply put, none of the cases cited by the defendant comes anywhere near the violent, persistent, and continued assaults on law enforcements officers that this defendant committed.

Similar to this defendant's actions in this case, the government highlights just a few cases where defendants physically and violently assaulted law enforcement officers on January 6, 2021, and those defendants – like defendant Mellis – are held pending trial. In *United States v. Mark Kenny Ponder*, 21 CR 259-TSC, the defendant has been held without bond because he struck an officer while wielding a long thin pole and struck a second and third officer with a thicker patriotic red-white-blue pole. In *United States v. Thomas Sibick*, 21 CR 291-ABJ, the defendant has been held without bond because he joined in the assault on a police officer and stole that officer's

badge and police radio. In *United States v. Daniel Rodriguez*, 21 CR 246-ABJ, the defendant has been detained prior to trial because he tased a police officer. In *United States v. Kyle Fitzsimons*, 21 CR 158 (KBJ), the defendant has been held without bond because he pulled officers by their body parts in an attempt to pull them into the crowd. The defendant in *Fitzsimons* also pulled the gas mask off another officer, which was then followed by another individual spraying that officer in the face. In *United States v. Joseph Lino Padilla*, 21 CR 214-JDB, the defendant has been held without bond because he, along with other rioters, used a large sign with a metal frame as a battering ram to push back law enforcement, led other rioters to push, headbutted law enforcement, threw large metal barricades onto officers to forcibly push them back, and hurled a flagpole at officers who were being attacked by rioters.

Importantly, defendant Mellis' conduct did not stop at his own individual decision to engage in physical violence. It extended to his active encouragement of other rioters to continue to try to break through the police line and into the building. Defendant Mellis' willing and repeated participation in violence against police officers protecting a lawful proceeding of Congress, for which he is charged with multiple felonies – including crime of violence – weighs heavily in favor of continued detention. Not only was his individual conduct and encouragement to others violent and dangerous, but his actions heightened the overall violence and dangerousness of the day. As stated by Chief Judge Beryl A. Howell, "[t]he actions of this violent mob, particularly those members who breached police lines and gained entry to the Capitol, are reprehensible as offenses against morality, civic virtue, and the rule of law." *See United States v. Chestman*, 21-mj-218 (BAH), ECF No. 23, at *13, 16 (D.D.C. Feb. 26, 2021) ("Grave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification"). Here, the defendant violently attacked

law enforcement officers who, with their heroic efforts, were protecting the U.S. Capitol and all who were inside. Significantly, in a very similar case, ***this Court denied a defendant's motion for pre-trial release. See United States v. Jack Wade Whitton, 2021 WL 1546931, this Court held that "Mr. Whitton's and his co-defendant's conduct on January 6, 2021, was among some of the most violent conduct that took place that day, and the Court cannot ignore that reality when evaluating his character and the potential threat he continues to pose to the community. Nor has the D.C. Circuit said that Court must turn a blind eye to Mr. Whitton's violent conduct when determining whether he poses a danger that warrants pretrial detention to safeguard the community." Id.***

Finally, the defendant cited a recent U.S. Court of Appeals for the D.C. Circuit decision, *Munchel v. United States*, 991 F.3d 1273 (D.C. Cir. 2021), in support of the defendant's release motion. The defendant argues that the defendant "was in the District of Columbia on January 6th to attend a peaceful, political event led by the then-President of the United States. Mr. Mellis does not pose a particular danger because he will not have the opportunity, capability, or resources to be a threat to democracy or to the Capitol Police. His limited participation was fully bounded by the scope of the January 6th events, and more particularly, by witnessing the death of Ms. Boyland at what he believed to be the hands of police." See Def. Mot. ECF #27 at 10. In that regard, this case presents a very different set of circumstances than were present in *Munchel*, and its reasoning and analysis support a finding of detention here. In *Munchel*, the Circuit Court observed that the defendants did not engage in any violence and were not involved in planning or coordinating. 991 F.3d at 1284. In contrast, this defendant violently assaulted several law enforcement officers on numerous occasions with a large stick numerous times with an intent to harm and physically injure the officers. The facts and principles outlined in *Munchel* clearly

supports continued detention of this defendant because he is a danger to the community if released and that danger has been shown in this case. Indeed, the defendant's danger is the result of his willingness to strike a uniformed police officer in the head, neck, and torso area with a large stick that he used as a weapon. Such danger is a function of the defendant's individual characteristics, not the larger group.

Furthermore, the defendant cites *United States v. Michael Foy*, 21-cr-108 (TSC) (ECF# 44 at 8, 10), as a similar case reason why he should be released. This argument fails on all accords and is a complete oppose of releasing this defendant and further strongly suggest why the defendant should be detained. In that case Judge Chutkan found, *inter alia*, that Foy had no prior criminal record, was honorably discharged from the United States Marine Corps in June of 2020, after approximately five years of service  . . . the gravity and unsettling nature of Foy's actions must be considered in the context of his long history of law-abiding behavior, his military service, and the absence of any remarks promoting or celebrating the events of January 6 or indicating a willingness or desire to engage in ongoing violence. Clearly, these factors are not present in the current case for this defendant in the instant case.

## <u>CONCLUSION</u>

These above-noted facts and circumstances, in consideration of the factors enumerated in 18 U.S.C. § 3142(g), demonstrate that defendant Mellis is a danger to the community and a risk of flight, and he faces a lengthy period of incarceration upon conviction. Accordingly, the United States requests that the defendant be detained without bond pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By: */s/ Emory V. Cole*
EMORY V. COLE
Assistant United States Attorney
PA. Bar Number 49136
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7692
Emory.Cole@usdoj.gov